IN THE UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

CANDICE O'CONNELL,

        CASE NO.: 3:24-cv-00419

        Plaintiff,

v.

CITY OF JACKSONVILLE,
SOUTHERN BAPTIST HOSPITAL
OF FLORIDA, INC., and MEGAN
GRIFFITH, RN,

        Defendants.

_____/

## THIRD AMENDED COMPLAINT AND DEMAND FOR JURY TRIAL

COMES NOW Plaintiff CANDICE O'CONNELL, by and through the undersigned attorneys of record, and files this THIRD Amended Complaint and Demand for Jury Trial against Defendants CITY OF JACKSONVILLE, SOUTHERN BAPTIST HOSPITAL OF FLORIDA, INC., and MEGAN GRIFFITH, RN. In support thereof, Plaintiff states the following:

### NATURE OF THE ACTION

1. This is an action against Defendant CITY OF JACKSONVILLE (hereinafter referred to as "COJ") to remedy its violations of the Americans with Disabilities Act, as amended by the Americans with Disability Act Amendments Act, 42 U.S.C. § 12111, et seq. ("ADA").

2. This is an action against Defendant COJ to remedy its violations of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq. ("Title VII").

1

3.    This is an action against Defendant COJ to remedy its violations of the Florida Civil Rights Act of 1992, Florida Statutes section 760.01, et seq. ("FCRA").

4.    This is an action against Defendant COJ to remedy its violations of the Family and Medical Leave Act, 29 U.S.C. § 2601 et seq. ("FMLA").

5.    This is an action against Defendant SOUTHERN BAPTIST HOSPITAL OF FLORIDA, INC. (hereinafter referred to as "BAPTIST") to remedy their breaches of a fiduciary duty it owed to Plaintiff and for vicarious liability.

6.    This is an action against Defendant MEGAN GRIFFITH, RN (hereinafter "NURSE GRIFFITH") to remedy her breach of a fiduciary duty she owed to Plaintiff.

## JURISDICTION AND VENUE

7.    Jurisdiction is conferred on this Court by 28 U.S.C. §§ 1331 and 1343(a), and 29 U.S.C. § 2617.

8.    This Court has supplemental jurisdiction over Plaintiff's state and common law claims pursuant to 28 U.S.C § 1367.

9.    Venue is proper in the Middle District of Florida, Jacksonville Division, under 28 U.S.C. § 1391(b), as all events pertinent hereto occurred in Duval County, Florida.

## EXHAUSTION OF ADMINISTRATIVE PREREQUISITES

10.    Plaintiff filed a charge of discrimination with the U.S. Equal Employment Opportunity Commission ("EEOC") on June 22, 2023.

11.     Plaintiff's charge of discrimination was dual filed with the Florida Commission on Human Relations ("FCHR") pursuant to the work-sharing agreement between the EEOC and FCHR.

12.     The EEOC issued a Determination and Notice of Rights on November 3, 2023, giving Plaintiff ninety (90) days to file suit under Title VII, which was to expire on February 2, 2024.

13.     The FCHR failed to make any determination regarding Plaintiff's charge of discrimination within 180 days of the date it was filed.

14.     Plaintiff and COJ entered into a tolling agreement on January 31, 2024, tolling Plaintiff's deadline to pursue all claims until April 30, 2024.

15.     Plaintiff has timely initiated the instant action upon the expiration of the tolling period.

## THE PARTIES

16.     Plaintiff is a natural person who at all times relevant to this action was an employee of Defendant COJ.

17.     Plaintiff is a resident of Clay County, Florida.

18.     Plaintiff is a "person" and "employee" as the term is defined by 42 U.S.C. § 2000e.

19.     Plaintiff is an "employee" as the term is defined by 42 U.S.C § 12111.

20.     Plaintiff is a "person" as the term is defined by section 760.02, Florida Statutes.

21.     Plaintiff is an "employee" and an "eligible employee" as the term is defined by 29 U.S.C. § 2611.

22.     Defendant COJ is a body politic and municipal entity authorized to conduct business and conducting business in Duval County, Florida.

23.     Defendant COJ is an "employer" as the term is defined by 42 U.S.C § 2000e.

24.     Defendant COJ is a "person" as the term is defined by 42 U.S. Code § 12111.

25.     Defendant COJ is an "employer" as the term is defined by section 760.02, Florida Statutes.

26.     Defendant COJ is an "employer" as the term is defined by 29 U.S.C. § 2611 and its incorporation of the relevant provisions of 29 U.S.C. § 203.

27.     Defendant BAPTIST is a hospital system incorporated under the laws of the State of Florida with its principal place of business in Duval County, Florida.

28.     Defendant NURSE GRIFFITH is an individual who resides within the Middle District of Florida.

29.     Defendant NURSE GRIFFITH is an individual who at all times material to the Complaint, was employed by Defendant BAPTIST.

## FACTUAL ALLEGATIONS

30.     At all times material to this Complaint, Plaintiff was an employee of COJ in its Fire and Rescue Department.

31. Beginning in April 2018, Plaintiff began experiencing gynecological complications following the birth of her youngest child.

32. Plaintiff sought medical treatment from multiple providers and was eventually referred to BAPTIST's MD Anderson Cancer Center.

33. Plaintiff first met with BAPTIST's M.D. Anderson Cancer Center in July 2021.

34. BAPTIST attempted a number of recommended treatments, but none were successful in curing Plaintiff's medical condition.

35. BAPTIST ultimately advised Plaintiff to undergo a hysterectomy.

36. July 18, 2022, Plaintiff was sent to BAPTIST's MD Anderson Cancer Center's surgical coordinator.

37. On July 28, 2022, Plaintiff was told by BAPTIST that the first available date for the surgery was September 2, 2022.

38. BAPTIST advised Plaintiff that her failure to have the surgery on September 2, 2022 would result in an extensive delay in performing the surgery due to BAPTIST's scheduling issues caused by its providers' availability.

39. On or about August 13, 2022, COJ announced that a promotional exam would occur on September 14, 2022.

40. COJ has established a set of Civil Service Rules, which provide that:

The City, through the personnel function, establishes the Personnel Policy of the City by these Civil Service and Personnel Rules and Regulations, including the classification of positions, qualifications for employment and promotions, certifications for employment, demotions, transfers, separations, layoffs, dismissals, compensation,

and discipline under which all Civil Service employees and/or potential Civil Service employees will be governed, without regard to race, color, age, marital status, disability, religion, political affiliation, gender, national origin or any circumstance other than merit, qualifications, and lawful compliance with these Rules, City ordinances and state and federal laws

Rule .02, Civil Service Rules of the City of Jacksonville.

41.    COJ, through its Civil Service Rules, established a process for making promotional decisions that include, in certain cases, the use of promotional examinations. *See* Rule 4, Civil Service Rules of the City of Jacksonville.

42.    An employee's score on a promotional examination dictates whether and where the employee is placed on an eligibility list. *See* Rule 5.01(2), Civil Service Rules of the City of Jacksonville.

43.    An employee's placement on an eligibility list is dictated by Rule 5 of the Civil Service Rules of the City of Jacksonville as well as COJ and the International Association of Firefighters, Local 122's Collective Bargaining Agreement for Fire Fighters, Fire Engineers, Fire Lieutenants, and Fire Captains. ("CBA")

44.    According to the CBA, "All persons with a passing score shall be ranked by resulting numerical score, with the person attaining the highest score ranked first. The top name of the list shall be certified first." CBA, 13.4.

45.    According to the CBA, "The life of a promotional list shall be two (2) years." CBA, 13.5.

46. That same day, Plaintiff contacted COJ about the process for obtaining a later testing date as a reasonable accommodation under the ADA.

47. Plaintiff was aware that COJ provided male employees not suffering from pregnancy-related medical conditions the ability to delay promotional examinations as reasonable accommodations in the past.

48. On August 24, 2022, Plaintiff received an email from COJ representative Leah Hayes containing the ADA forms and the process for completing and submitting such forms. Plaintiff also obtained blank FMLA forms from COJ on this date.

49. That same day, COJ representative Brenda Hunt informed Plaintiff that the ADA and FMLA paperwork would need to be completed and submitted by the end of the "sign up period," which closed August 26, 2022.

50. To expedite the process due to the time constraints, and as instructed by NURSE GRIFFITH and BAPTIST, Plaintiff completed the ADA and FMLA forms to the best of her ability so that NURSE GRIFFITH and BAPTIST could review and complete the paperwork in a timely fashion.

51. After consultation with BAPTIST, Plaintiff believed that she would be unable to sit for the examination less than two weeks after her surgery due to likely length of her recovery and need to take pain medication.

52. Based on that consultation and belief, Plaintiff included in her ADA form that she needed a later testing date as an accommodation and requested 6-12 months of intermittent FMLA leave.

53. On September 2, 2022, Plaintiff underwent surgery.

54. Due to complications associated with the surgery, Plaintiff was subsequently hospitalized for several days.

55. After being released from the hospital on September 4, 2024, Plaintiff was readmitted on September 6, 2024, to undergo a second surgery, which was performed on September 7, 2024.

56. While she was admitted for the second surgery, Plaintiff continued to be treated by BAPTIST.

57. On September 8, 2022, Plaintiff was discharged for a second time and finally received the signed ADA paperwork from NURSE GRIFFITH and BAPTIST.

58. That signed paperwork contained the same portions Plaintiff had filled out with the remainder of the form completed and signed by NURSE GRIFFITH.

59. That document specifically stated that Plaintiff required a later testing date as a reasonable accommodation.

60. That same day, Plaintiff submitted the completed ADA paperwork to COJ without amending it in any fashion.

61. On September 9, 2022, Plaintiff received signed FMLA paperwork from NURSE GRIFFITH and BAPTIST.

62. That signed paperwork contained the same portions Plaintiff had filled out with the remainder of the form completed and signed by NURSE GRIFFITH.

63.     That document specifically stated that Plaintiff required intermittent FMLA for 6-12 months.

64.     On September 13, 2022, Plaintiff submitted the FMLA paperwork to COJ without amending it in any fashion.

65.     However, Plaintiff did provide an addendum, which she signed using her own name, to add the following statement regarding the second surgery that occurred after Plaintiff submitted the pre-completed FMLA paperwork to NURSE GRIFFITH and BAPTIST:

> Late addition: Mrs. O'Connell was also advised and underwent emergency exploratory laparotomy and resultant appendectomy, arising from complications from the 9/2/22 surgery. Additional paperwork/documentation to be supplied [at] employer request.

66.     Unbeknownst to Plaintiff, COJ contacted BAPTIST and NURSE GRIFFITH about Plaintiff's ADA and FMLA forms on September 9, 2022.

67.     COJ obtained revised FMLA forms from BAPTIST and NURSE GRIFFITH on or about September 14, 2022.

68.     Specifically, NURSE GRIFFITH and BAPTIST communicated with COJ regarding Plaintiff's protected medical information without Plaintiff's knowledge or consent by changing the FMLA form in the following ways and submitting the document to COJ:

a.     BAPTIST and NURSE GRIFFITH edited the FMLA form by striking through and initialing changes to remove Plaintiff's request for

intermittent FMLA and reduce the duration of her condition from 6-12 months to eight weeks; and

       b.     BAPTIST and NURSE GRIFFITH revised the form to state that Plaintiff would not need follow-up treatment, or a reduced schedule and that Plaintiff would not experience episodic flare-ups preventing her from performing her job.

69.     Notably, BAPTIST and NURSE GRIFFITH did not remove Plaintiff's "late addition" of information but appear to have confirmed its accuracy by writing the date of the surgery and the name of the surgeon.

70.     BAPTIST and NURSE GRIFFITH communicated with COJ regarding Plaintiff's protected medical information without Plaintiff's knowledge or consent by changing the ADA form by whiting out and removing Plaintiff's request for an accommodated testing date, and instead, stating that Plaintiff only needed frequent breaks, additional testing time, and that she could not sit or stand for prolonged periods.

71.     BAPTIST and NURSE GRIFFITH also submitted a separate "ADA Information Request" form to COJ.

72.     The completed ADA Information Request form recommended "6 weeks off of work from 9/7/22 (2nd operation), can return after 2 weeks with physical restrictions if doing desk work and off narcotics."

73.     Such a restriction would necessarily require Plaintiff to be off work and unable to sit for the September 14, 2022, promotional examination.

74. The information provided by BAPTIST and NURSE GRIFFITH to COJ in the revised ADA and FMLA forms was inconsistent with the restriction BAPTIST and NURSE GRIFFITH recommended in the subsequently submitted ADA Information Request, which necessitated a later testing date as an accommodation.

75. On September 13, 2022, the day before the scheduled promotional examination, Plaintiff received a letter from COJ denying her request that she be given a later examination date as an accommodation, but approving the following accommodations:

    a. Two (2) additional hours to take the test.

    b. A quiet room in which to take the test.

    c. The ability to bring water into the testing room.

    d. The ability to get up and walk around as needed.

    e. Access to a stretcher/cot to use as needed; and

    f. Transportation to and from the testing site.

76. The examination accommodations provided by COJ were woefully inadequate to address Plaintiff's medical restrictions identified in the ADA Information Request.

77. The examination accommodations provided by COJ were inconsistent with the work restrictions identified in the ADA Information Request.

78. Plaintiff was deemed eligible to sit for the promotional examination.

79. Plaintiff was unable to sit for the promotional examination.

80.     Plaintiff was denied the opportunity to take the promotional examination, preventing her from being placed on the eligibility list for a Captain position.

81.     On every prior promotional examination Plaintiff took during her employment with Defendant COJ, she scored at least a 94.

82.     After including Plaintiff's seniority points, her lowest score was a 98.

83.     Based on her performance on prior promotional examinations, Plaintiff was ranked in such a manner that she was promoted from Engineer to Lieutenant, and from Lieutenant to Captain.

84.     The highest score that any applicant received on the Chief promotional examination in question was an 89, even after applying seniority points.

85.     Given her history of academic performance and proven record of scoring above 94 on all prior promotional examinations, Plaintiff would have likely scored in a top position if she had been permitted to take the Chief promotional examination in question.

86.     Four employees were promoted to the position of Chief from the promotional list developed as a result of the Chief promotional examination in question.

87.     Plaintiff would have likely been promoted to the position of Chief had been permitted to sit for the promotional examination.

88.     On September 13, 2024, Plaintiff spoke with a representative of COJ regarding the fact that she was taking prescribed medication to manage the pain associated with her surgeries.

89.     Immediately after that conversation, Plaintiff was contacted by COJ's Employee Assistance Program ("EAP") and told that her employer reported concerns that Plaintiff was abusing controlled substances and was exhibiting suicidal behavior.

90.     These statements were untrue.

91.     Nevertheless, Plaintiff was required to undergo an evaluation by COJ's EAP representatives before she could be cleared to return to work.

92.     On September 26, 2022, COJ approved Plaintiff's request for FMLA leave for the period September 2, 2022, through November 2, 2022, denying Plaintiff's request for intermittent FMLA leave.

93.     On September 26, 2022, Plaintiff appealed the accommodation decision to COJ but was not afforded the opportunity to complete that internal appeal.

94.     On September 26, 2022, COJ contacted the Jacksonville Sheriff's Office ("JSO") Integrity Unit, claiming that Plaintiff committed forgery and/or fraud by allegedly altering the medical paperwork she received from BAPTIST before submitting it to COJ.

95.     BAPTIST and NURSE GRIFFITH continued to communicate with COJ regarding Plaintiff's medical conditions without Plaintiff's knowledge and consent.

96.     During those phone conversations, BAPTIST and NURSE GRIFFITH revealed confidential information about Plaintiff's medical conditions.

97.     During those phone conversations, BAPTIST and NURSE GRIFFITH made untrue statements about Plaintiff's medical conditions, including that Plaintiff "demanded that her appendix be taken out. However, there was nothing wrong with her appendix" and that "[s]he requested to be placed in ICU although it was not needed."

98.     NURSE GRIFFITH's statements to COJ were not true.

99.     Defendant COJ provided these untrue statements to JSO's Integrity Unit on October 27, 2022.

100.    During the JSO Integrity Unit's investigation NURSE GRIFFITH was interviewed on January 9, 2023.

101.    During that interview, NURSE GRIFFITH was asked about the versions of the ADA and FMLA paperwork containing the white outs, cross outs, and edits.

102.    NURSE GRIFFITH explained during the interview that Plaintiff "amended" the FMLA paperwork after she provided it to Plaintiff. In doing so, NURSE GRIFFITH told the detective that Plaintiff directed her to return the FMLA form to Plaintiff so that Plaintiff could submit it to COJ.

14

103.    Smirking and smiling during the investigatory interview, NURSE GRIFFITH went on to tell the detective that Plaintiff's directive "should have been [her] first red flag," clearly attempting to ascribe to Plaintiff some kind of bad motive or surreptitious intent.

104.    In truth, Plaintiff's directive was intended to preserve her right to keep certain protected health information confidential and was not evidence of deceit or ill intent.

105.    While it is true that Plaintiff added an addendum to the final page of the FMLA paperwork before she submitted it to COJ, she noted that it was a "late addition" and signed it in her own name.

106.    Plaintiff's addendum did not intend or have the effect of deceiving anyone.

107.    Instead, Plaintiff's addendum merely notated that she had undergone an additional surgery, which transpired after she pre-completed the FMLA form and provided it to NURSE GRIFFITH and BAPTIST for review and signature.

108.    When asked to review and revised the FMLA form, NURSE GRIFFITH did not remove Plaintiff's addendum, but instead, adopted it by notating the date and the physician who performed the second surgery.

109.    During the interview, NURSE GRIFFITH was also shown the version of the ADA paperwork she initially signed, which Plaintiff submitted to COJ.

110.    NURSE GRIFFITH was asked whether Plaintiff had permission to "turn it in like this."

111.    In response, NURSE GRIFFITH did not directly answer the question or state that Plaintiff did in fact have permission to submit the ADA form as it had been initially completed.

112.    Instead, Nurse Griffith compared Plaintiff's conduct regarding the ADA paperwork to the FMLA paperwork to suggest that Plaintiff engaged in similar alleged wrongdoing.

113.    NURSE GRIFFITH's actions and representations were inaccurate and misleading.

114.    The investigation into Plaintiff continued for over four months after NURSE GRIFFITH was interviewed.

115.    Based on information and belief, the untrue, inaccurate, and misleading statements given by NURSE GRIFFITH to COJ and JSO's Integrity Unit contributed to the investigation being prolonged.

116.    The Jacksonville Sheriff's Office and the State Attorney's Office ultimately designated the case as "criminally exonerated" and no charges were brought against Plaintiff on April 27, 2023.

117.    Plaintiff suffered from the emotional distress caused by being subjected to the prolonged investigation by JSO's Integrity Unit.

118.    Plaintiff was forced to pay thousands of dollars to her criminal defense attorney to provide her with representation during the pendency of the unnecessarily prolonged JSO Integrity Unit investigation.

119. After requesting and being denied her necessary accommodation and intermittent FMLA leave, and filing her charge of discrimination, Plaintiff applied and interviewed for, but was denied, the following administrative opportunities:

a. On November 4, 2023, Plaintiff was denied an administrative appointment to the position of Recovery Specialist, Emergency Management;

b. On December 2, 2023, Plaintiff was denied an administrative appointment to the position of Grants Administrator, Emergency Management; and

c. On January 12, 2024, Plaintiff was denied an administrative appointment to the position of Health and Medical Liaison, Emergency Management.

120. In addition to being denied administrative opportunities, COJ prevented Plaintiff from applying for the Health Safety Officer position, which was awarded to another employee on February 17, 2024.

121. Furthermore, effective April 24, 2024, Plaintiff was notified that she was no longer approved to be a clinical or field preceptor for COJ's Jacksonville Fire and Rescue Department ("JFRD") personnel attending paramedic programs at the south campus of Florida State College at Jacksonville.

122. The Office of Civil Rights within the U.S. Department of Health and Human Services issued a letter finding that BAPTIST violated Plaintiff's rights protected by the Health Insurance Portability and Accountability Act (HIPAA) by

engaging in such unauthorized communications about Plaintiff's protected health information with COJ.

## COUNT I: DISCRIMINATION IN VIOLATION OF THE ADA AGAINST DEFENDANT COJ (FAILURE TO ACCOMMODATE)

123.     Plaintiff incorporates the allegations made in paragraphs 1, 7, 9, 10-15, 16-17, 19, 22, 24, 30-46, 48-60, 66-67, and 70-87 as if fully restated herein.

124.     Plaintiff suffered from a disability within the meaning of the ADA as a result of her medical condition and surgery.

125.     Plaintiff is and was a qualified individual capable of performing the essential functions of her job with or without an accommodation.

126.     COJ knew about Plaintiff's disability at the time Plaintiff requested an accommodation.

127.     Plaintiff requested that she be provided a later testing date as a reasonable accommodation for her disability.

128.     COJ failed to provide the necessary accommodation.

129.     Based on information and belief, COJ disregarded the limitations identified in the ADA Information Request when it denied Plaintiff's request to take the promotional examination on a later date.

130.     COJ's failure to provide Plaintiff with the necessary accommodation is an illegal act of disability discrimination barred by the ADA.

131.     Said acts by COJ, as set forth above, have caused and continue to cause Plaintiff past and ongoing damages.

WHEREFORE, Plaintiff seeks an order prohibiting the discriminatory practices set forth above, an order awarding back pay, front pay, compensatory damages, pre and post judgment interest, damages for emotional distress, attorneys' fees and costs and any other relief that this Court deems is just and proper.

### COUNT II: DISCRIMINATION IN VIOLATION OF THE FCRA AGAINST DEFENDANT COJ (FAILURE TO ACCOMMODATE)

132. Plaintiff incorporates the allegations made in paragraphs 3, 7-17, 20, 25, 30-46, 48-60, 66-67, and 70-87 as if fully restated herein.

133. Plaintiff suffered from a handicap within the meaning of the FCRA as a result of her medical condition and surgery.

134. Plaintiff is and was a qualified individual capable of performing the essential functions of her job with or without an accommodation.

135. COJ knew about Plaintiff's handicap at the time Plaintiff requested an accommodation.

136. Plaintiff requested that she be provided a later testing date as a reasonable accommodation for her handicap.

137. COJ failed to provide the necessary accommodation.

138. Based on information and belief, COJ disregarded the limitations identified in the ADA Information Request when it denied Plaintiff's request to take the promotional examination on a later date.

139.    COJ's failure to provide Plaintiff with the necessary accommodation is an illegal act of discrimination on the basis of Plaintiff's handicap and is barred by the FCRA.

140.    Said acts by COJ, as set forth above, have caused and continue to cause Plaintiff past and ongoing damages.

WHEREFORE, Plaintiff seeks an order prohibiting the discriminatory practices set forth above, an order awarding back pay, front pay, compensatory damages, pre and post judgment interest, damages for emotional distress, attorneys' fees and costs and any other relief that this Court deems is just and proper.

### COUNT III: RETALIATION IN VIOLATION OF THE ADA AGAINST DEFENDANT COJ

141.    Plaintiff incorporates the allegations made in paragraphs 1, 7, 9, 10-15, 16-17, 19, 22, 24, 30-46, 48-60, 66-67, 70-91, 93-94, and 119-121 as if fully restated herein.

142.    Plaintiff engaged in protected activity under the ADA when she requested an accommodation pursuant to the ADA and when she filed a charge of discrimination with the EEOC and the FCHR asserting discrimination under the ADA.

143.    Defendant had an ongoing legal obligation to maintain a workplace free of unlawful retaliation.

144. In retaliation for her request protected activities, COJ: (a) subjected Plaintiff to a Jacksonville Sheriff's Office Integrity Unit investigation; (b) subjected Plaintiff to involuntary assessments by mental health providers; and (c) denied Plaintiff numerous appointment opportunities within the department; (d) refused to permit Plaintiff to appeal the denial of her accommodation request; (e) prevented Plaintiff from applying for the Health Safety Officer position; and (f) notified that she was no longer approved to be a clinical or field preceptor for COJ's JFRD personnel attending paramedic programs at the south campus of Florida State College at Jacksonville.

145. The retaliatory actions were such that they would dissuade a reasonable employee from requesting a reasonable accommodation.

146. Plaintiff was deprived of her rights guaranteed by law.

147. COJ's retaliatory actions are unlawful and prohibited by the ADA.

148. Said acts by COJ, as set forth above, have caused and continue to cause Plaintiff past and ongoing damages.

WHEREFORE, Plaintiff seeks an order prohibiting the discriminatory practices set forth above, an order awarding back pay, front pay, compensatory damages, pre and post judgment interest, damages for emotional distress, attorneys' fees and costs and any other relief that this Court deems is just and proper.

## COUNT IV: RETALIATION IN VIOLATION OF THE FCRA AGAINST DEFENDANT COJ

149. Plaintiff incorporates the allegations made in paragraphs 3, 7-17, 20, 25, 30-46, 48-60, 66-67, 70-91, 93-94, and 119-121 as if fully restated herein.

150. Plaintiff engaged in protected activity under the FCRA when she requested an accommodation pursuant to the FCRA and when she filed a charge of discrimination with the EEOC and FCHR asserting discrimination under the FCRA.

151. Defendant had an ongoing legal obligation to maintain a workplace free of unlawful retaliation.

152. In retaliation for her request protected activities, COJ: (a) subjected Plaintiff to a Jacksonville Sheriff's Office Integrity Unit investigation; (b) subjected Plaintiff to involuntary assessments by mental health providers; (c) denied Plaintiff numerous appointment opportunities within the department; (d) refused to permit Plaintiff to appeal the denial of her accommodation request; (e) prevented Plaintiff from applying for the Health Safety Officer position; and (f) notified that she was no longer approved to be a clinical or field preceptor for COJ's JFRD personnel attending paramedic programs at the south campus of Florida State College at Jacksonville.

153. The retaliatory actions were such that they would dissuade a reasonable employee from requesting a reasonable accommodation.

154. Plaintiff was deprived of her rights guaranteed by law.

155. COJ's retaliatory actions are unlawful and prohibited by the FCRA.

156.    Said acts by COJ, as set forth above, have caused and continue to cause Plaintiff past and ongoing damages.

WHEREFORE, Plaintiff seeks an order prohibiting the discriminatory practices set forth above, an order awarding back pay, front pay, compensatory damages, pre and post judgment interest, damages for emotional distress, attorneys' fees and costs and any other relief that this Court deems is just and proper.

## COUNT V: DISCRIMINATION IN VIOLATION OF TITLE VII AGAINST DEFENDANT COJ (GENDER)

157.    Plaintiff incorporates the allegations made in paragraphs 2, 7, 9, 10-18, 22-23, 30-60, and 70-87 as if fully restated herein.

158.    Plaintiff is female.

159.    Plaintiff requested, as a reasonable accommodation for her disability and/or handicap, that she be permitted to take a promotional examination on a later date.

160.    COJ denied Plaintiff's requested accommodation.

161.    Based on information and belief, COJ disregarded the limitations identified in the ADA Information Request when it denied Plaintiff's request to take the promotional examination on a later date.

162.    COJ previously provided Plaintiff's requested accommodation to male employees.

163.   COJ intentionally discriminated against Plaintiff because of her gender by denying her requested accommodation.

164.   COJ's failure to accommodate Plaintiff on the basis of her sex is unlawful discrimination barred by Title VII.

165.   Said acts by COJ, as set forth above, have caused and continue to cause Plaintiff past and ongoing damages.

WHEREFORE, Plaintiff seeks an order prohibiting the discriminatory practices set forth above, an order awarding back pay, front pay, compensatory damages, pre and post judgment interest, damages for emotional distress, attorneys' fees and costs and any other relief that this Court deems is just and proper.

### COUNT VI: DISCRIMINATION IN VIOLATION OF THE FCRA AGAINST DEFENDANT COJ (GENDER)

166.   Plaintiff incorporates the allegations made in paragraphs 3, 7-9, 10-17, 20, 25, 30-60, and 70-87 as if fully restated herein.

167.   Plaintiff is female.

168.   Plaintiff requested, as a reasonable accommodation for her disability and/or handicap, that she be permitted to take a promotional examination on a later date.

169.   COJ denied Plaintiff's requested accommodation.

170.   Based on information and belief, COJ disregarded the limitations identified in the ADA Information Request when it denied Plaintiff's request to take the promotional examination on a later date.

171. COJ previously provided Plaintiff's requested accommodation to male employees.

172. COJ intentionally discriminated against Plaintiff because of her gender by denying her requested accommodation.

173. COJ's failure to accommodate Plaintiff on the basis of her gender is unlawful discrimination barred by the FCRA.

174. Said acts by COJ, as set forth above, have caused and continue to cause Plaintiff past and ongoing damages.

WHEREFORE, Plaintiff seeks an order prohibiting the discriminatory practices set forth above, an order awarding back pay, front pay, compensatory damages, pre and post judgment interest, damages for emotional distress, attorneys' fees and costs and any other relief that this Court deems is just and proper.

## COUNT VII: DISCRIMINATION IN VIOLATION OF TITLE VII AGAINST DEFENDANT COJ (PREGNANCY)

175. Plaintiff incorporates the allegations made in paragraphs 2, 7, 9, 10-18, 22-23, 30-60, and 70-87 as if fully restated herein.

176. Plaintiff suffered from a pregnancy-related medical condition.

177. Plaintiff requested, as a reasonable accommodation for her pregnancy-related medical condition, that she be permitted to take a promotional examination on a later date.

178. COJ denied Plaintiff's requested accommodation.

179. Based on information and belief, COJ disregarded the limitations identified in the ADA Information Request when it denied Plaintiff's request to take the promotional examination on a later date.

180. COJ previously provided Plaintiff's requested accommodation to male employees who were not suffering from pregnancy-related medical conditions.

181. COJ intentionally discriminated against Plaintiff because of her pregnancy-related medical condition by denying her requested accommodation.

182. COJ's failure to accommodate Plaintiff on the basis of her pregnancy-related medical condition is unlawful sex discrimination prohibited by Title VII.

183. Said acts by COJ, as set forth above, have caused and continue to cause Plaintiff past and ongoing damages.

WHEREFORE, Plaintiff seeks an order prohibiting the discriminatory practices set forth above, an order awarding back pay, front pay, compensatory damages, pre and post judgment interest, damages for emotional distress, attorneys' fees and costs and any other relief that this Court deems is just and proper.

## COUNT VIII: DISCRIMINATION IN VIOLATION OF THE FCRA AGAINST DEFENDANT COJ (PREGNANCY)

184. Plaintiff incorporates the allegations made in paragraphs 3, 7-9, 10-17, 20, 25, 30-60, and 70-87 as if fully restated herein.

185. Plaintiff suffered from a pregnancy-related medical condition.

186. Plaintiff requested, as a reasonable accommodation for her pregnancy-related medical condition, that she be permitted to take a promotional examination on a later date.

187. COJ denied Plaintiff's requested accommodation.

188. Based on information and belief, COJ disregarded the limitations identified in the ADA Information Request when it denied Plaintiff's request to take the promotional examination on a later date.

189. COJ previously provided Plaintiff's requested accommodation to male employees who were not suffering from pregnancy-related medical conditions.

190. COJ intentionally discriminated against Plaintiff because of her pregnancy-related medical condition by denying her requested accommodation.

191. COJ's failure to accommodate Plaintiff on the basis of her pregnancy-related medical condition is unlawful sex discrimination prohibited by the FCRA.

192. Said acts by COJ, as set forth above, have caused and continue to cause Plaintiff past and ongoing damages.

WHEREFORE, Plaintiff seeks an order prohibiting the discriminatory practices set forth above, an order awarding back pay, front pay, compensatory damages, pre and post judgment interest, damages for emotional distress, attorneys' fees and costs and any other relief that this Court deems is just and proper.

## COUNT IX: RETALIATION IN VIOLATION OF TITLE VII
## AGAINST DEFENDANT COJ

193.   Plaintiff incorporates the allegations made in paragraphs 2, 7, 9, 10-18, 22-23, 30-60, 70-91, 93-94, and 119-121 as if fully restated herein.

194.   Plaintiff engaged in protected activity under Title VII when she requested a reasonable accommodation for her pregnancy-related medical condition and when she filed a charge of discrimination with the EEOC and FCHR alleging discrimination based on the basis of gender and pregnancy.

195.   Defendant had an ongoing legal obligation to maintain a workplace free of unlawful retaliation.

196.   In retaliation for her engaging in protected activities, COJ: (a) subjected Plaintiff to a Jacksonville Sheriff's Office Integrity Unit investigation; (b) subjected Plaintiff to involuntary assessments by mental health providers; and (c) denied Plaintiff numerous appointment opportunities within the department; (d) refused to permit Plaintiff to appeal the denial of her accommodation request; (e) prevented Plaintiff from applying for the Health Safety Officer position; and (f) notified that she was no longer approved to be a clinical or field preceptor for COJ's JFRD personnel attending paramedic programs at the south campus of Florida State College at Jacksonville.

197.   The retaliatory actions were such that they would dissuade a reasonable employee from requesting a reasonable accommodation.

198.   Plaintiff was deprived of her rights guaranteed by law.

199. COJ's conduct in response to Plaintiff's protected conduct is unlawful retaliation prohibited by Title VII.

200. Said acts by COJ, as set forth above, have caused and continue to cause Plaintiff past and ongoing damages.

WHEREFORE, Plaintiff seeks an order prohibiting the discriminatory practices set forth above, an order awarding back pay, front pay, compensatory damages, pre and post judgment interest, damages for emotional distress, attorneys' fees and costs and any other relief that this Court deems is just and proper.

## COUNT X: RETALIATION IN VIOLATION OF THE FCRA AGAINST DEFENDANT COJ

201. Plaintiff incorporates the allegations made in paragraphs 3, 7-9, 10-17, 20, 25, 30-60, 70-91, 93-94, and 119-121 as if fully restated herein.

202. Plaintiff engaged in protected activity under the FCRA when she requested a reasonable accommodation for her pregnancy-related medical condition and when she filed a charge of discrimination with the EEOC and FCHR alleging discrimination based on the basis of gender and pregnancy.

203. Defendant had an ongoing legal obligation to maintain a workplace free of unlawful retaliation.

204. In retaliation for her request protected activities, COJ: (a) subjected Plaintiff to a Jacksonville Sheriff's Office Integrity Unit investigation; (b) subjected Plaintiff to involuntary assessments by mental health providers; and (c) denied

Plaintiff numerous appointment opportunities within the department; (d) refused to permit Plaintiff to appeal the denial of her accommodation request; (e) prevented Plaintiff from applying for the Health Safety Officer position; and (f) notified that she was no longer approved to be a clinical or field preceptor for COJ's JFRD personnel attending paramedic programs at the south campus of Florida State College at Jacksonville.

205. The retaliatory actions were such that they would dissuade a reasonable employee from requesting a reasonable accommodation.

206. Plaintiff was deprived of her rights guaranteed by law.

207. COJ's conduct in response to Plaintiff's protected conduct is unlawful retaliation prohibited by the FCRA.

208. Said acts by COJ, as set forth above, have caused and continue to cause Plaintiff past and ongoing damages.

WHEREFORE, Plaintiff seeks an order prohibiting the discriminatory practices set forth above, an order awarding back pay, front pay, compensatory damages, pre and post judgment interest, damages for emotional distress, attorneys' fees and costs and any other relief that this Court deems is just and proper.

## COUNT XI: RETALIATION IN VIOLATION OF THE FMLA AGAINST DEFENDANT COJ

209. Plaintiff incorporates the allegations made in paragraphs 4, 7-9, 16-17, 21, 26, 30-39, 48-59, 61-69, 88-94, and 119-121 as if fully restated herein.

210.    Plaintiff engaged in protected activity under the FMLA when she applied for and received medical leave pursuant to the FMLA.

211.    Defendant had an ongoing legal obligation to maintain a workplace free of unlawful retaliation.

212.    In retaliation for her engaging in protected activities, COJ: (a) subjected Plaintiff to a Jacksonville Sheriff's Office Integrity Unit investigation; (b) subjected Plaintiff to involuntary assessments by mental health providers; and (c) denied Plaintiff numerous appointment opportunities within the department; (d) refused to permit Plaintiff to appeal the denial of her accommodation request; (e) prevented Plaintiff from applying for the Health Safety Officer position; and (f) notified that she was no longer approved to be a clinical or field preceptor for COJ's JFRD personnel attending paramedic programs at the south campus of Florida State College at Jacksonville.

213.    The retaliatory actions were such that they would dissuade a reasonable employee from exercising rights protected by the FMLA.

214.    Plaintiff was deprived of her rights guaranteed by law.

215.    COJ acted willfully when it violated the FMLA in that it knew or showed reckless disregard for the matter of whether its conduct was prohibited by the FMLA.

216.    COJ acted with malice or reckless indifference to Plaintiff's federally protected rights.

217. COJ's conduct in response to Plaintiff's protected conduct is unlawful retaliation prohibited by FMLA.

218. Said acts by COJ, as set forth above, have caused and continue to cause Plaintiff past and ongoing damages.

WHEREFORE, Plaintiff seeks an order prohibiting the discriminatory practices set forth above, an order awarding back pay, front pay, liquidated damages, attorneys' fees and costs and any other relief that this Court deems is just and proper.

## COUNT XII: INTERFERENCE IN VIOLATION OF THE FMLA AGAINST DEFENDANT COJ

219. Plaintiff incorporates the allegations made in paragraphs 4, 7-9, 16-17, 21, 26, 30-39, 48-59, 61-69, and 92 as if fully restated herein.

220. Plaintiff was entitled to leave pursuant to the FMLA.

221. Plaintiff applied for intermittent medical leave pursuant to the FMLA.

222. COJ inexplicably denied her request for intermittent leave and only approved a short period of leave following her surgery.

223. COJ acted willfully when it violated the FMLA in that it knew or showed reckless disregard for the matter of whether its conduct was prohibited by the FMLA.

224. COJ acted with malice or reckless indifference to Plaintiff's federally protected rights.

225. COJ's conduct in response to Plaintiff's protected conduct is unlawful retaliation prohibited by the FMLA.

226. Said acts by COJ, as set forth above, have caused and continue to cause Plaintiff past and ongoing damages.

WHEREFORE, Plaintiff seeks an order prohibiting the discriminatory practices set forth above, an order awarding back pay, front pay, liquidated damages, attorneys' fees and costs and any other relief that this Court deems is just and proper.

## COUNT XIII: BREACH OF FIDUCIARY DUTY
## AGAINST DEFENDANT BAPTIST

227. Plaintiff incorporates the allegations made in paragraphs 5, 7-9, 16-17, 27, 31-97, 92, and 94-122 as if fully restated herein.

228. As a patient of BAPTIST, Plaintiff and BAPTIST share a relationship whereby Plaintiff reposes trust and confidence in BAPTIST and BAPTIST undertakes such trust and assumes a duty to advice, counsel, and/or protect Plaintiff.

229. BAPTIST breached its duties to Plaintiff when, through its employees, representatives, or agents, it revealed confidential health information to COJ.

230. Baptist breached its duties to Plaintiff when, through its employees, representatives, or agents, it revealed untrue information to COJ regarding Plaintiff's medical conditions.

231.   BAPTIST breached its duties to Plaintiff when, through its employees, representatives, or agents, it provided inaccurate, untrue, and misleading information to COJ and the JSO Integrity Unit regarding Plaintiff's actions in relation to the completion of the ADA and FMLA paperwork.

232.   Based on information and belief, COJ relied on such information provided by BAPTIST when it decided to contact the JSO Integrity Unit with allegations that Plaintiff committed forgery and/or fraud.

233.   Based on information and belief, COJ relied on such information provided by BAPTIST when COJ denied Plaintiff's request for intermittent FMLA.

234.   Based on information and belief, COJ relied on such information when it decided to deny Plaintiff's requested accommodation resulting in her inability to sit for the Chief promotional examination preventing Plaintiff from being promoted to a Chief position and causing Plaintiff to be denied the compensation and benefits associated with such a promotion.

235.   Based on information and belief, COJ relied on such information provided by BAPTIST when it denied Plaintiff multiple administrative opportunities causing Plaintiff to be denied the compensation and benefits associated with such opportunities.

236.   Based on information and belief, COJ relied on such information provided by BAPTIST when it prevented Plaintiff from applying for the Health Safety Officer position.

237.  Based on information and belief, COJ relied on such information provided by BAPTIST when it decided to no longer approve Plaintiff to be a clinical field preceptor for COJ's JFRD personnel attending paramedic programs at the south campus of Florida State College at Jacksonville.

238. Based on information and belief, The JSO Integrity Unit's investigation was unnecessarily prolonged by such information provided by BAPTIST, causing Plaintiff to expend attorneys' fees on a criminal defense attorney and causing Plaintiff pain and suffering and emotional distress as a result of the pending investigation.

WHEREFORE, Plaintiff seeks an order prohibiting the practices set forth above, an order awarding back pay, front pay, compensatory damages, pre and post judgment interest, damages for emotional distress, punitive damages, nominal damages, and any other relief that this Court deems is just and proper.

## COUNT XIV: VICARIOUS LIABILITY
## AGAINST DEFENDANT BAPTIST

239.  Plaintiff incorporates the allegations made in paragraphs 5, 7-9, 16-17, 27, 31-97, 92, and 94-122 as if fully restated herein.

240.  As a patient of NURSE GRIFFITH, Plaintiff and NURSE GRIFFITH share a relationship whereby Plaintiff reposes trust and confidence in NURSE GRIFFITH and NURSE GGRIFFITH undertakes such trust and assumes a duty to advice, counsel, and/or protect Plaintiff.

241. NURSE GRIFFITH breached her duties to Plaintiff when she revealed confidential health information to COJ.

242. NURSE GRIFFITH breached her duties to Plaintiff when she revealed untrue information to COJ regarding Plaintiff's medical condition.

243. NURSE GRIFFITH breached her duties to Plaintiff when she provided untrue, inaccurate, and misleading information to COJ and the JSO Integrity Unit regarding Plaintiff's actions in relation to the completion of the ADA and FMLA paperwork.

244. As NURSE GRIFFITH's employer, BAPTIST exercised substantial control over NURSE GRIFFITH.

245. BAPTIST held NURSE GRIFFITH out as an employee of BAPTIST.

246. BAPTIST was on notice of NURSE GRIFFITH's breaches of her fiduciary duty.

247. BAPTIST failed to take reasonable steps and failed to implement reasonable safeguards to avoid continued breaches of NURSE GRIFFITH's fiduciary duty to Plaintiff.

248. BAPTIST's acquiescence and inaction with respect to the known breaches of NURSE GRIFFITH's fiduciary duties evinces BAPTIST's approval and authorization of such conduct, or, alternative, its gross negligence in failing to correct such conduct.

249. Through its failure to timely reprimand and sanction the acts referenced herein, BAPTIST ratified the aforementioned conduct and are therefore

vicariously liable for the actions of its employee's breaches of the fiduciary duty owed to Plaintiff.

250.   Based on information and belief, COJ relied on such information provided by NURSE GRIFFITH when it decided to contact the JSO Integrity Unit with allegations that Plaintiff committed forgery and/or fraud.

251.   Based on information and belief, COJ relied on such information provided by NURSE GRIFFITH when it decided to deny Plaintiff's requested accommodation resulting in her inability to sit for the Chief promotional examination preventing Plaintiff from being promoted to a Chief position and causing Plaintiff to be denied the compensation and benefits associated with such a promotion.

252.   Based on information and belief, COJ relied on the such information provided by NURSE GRIFFITH when it denied Plaintiff's request for intermittent FMLA.

253.   Based on information and belief, COJ relied on such information provided by NURSE GRIFFITH when it denied Plaintiff multiple administrative opportunities causing Plaintiff to be denied the compensation and benefits associated with such opportunities.

254.   Based on information and belief, COJ relied on such information provided by NURSE GRIFFITH when it prevented Plaintiff from applying for the Health Safety Officer position.

255. Based on information and belief, COJ relied on such information provided by NURSE GRIFFITH when it decided to no longer approve Plaintiff to be a clinical field preceptor for COJ's JFRD personnel attending paramedic programs at the south campus of Florida State College at Jacksonville.

256. Based on information and belief, The JSO Integrity Unit's investigation was unnecessarily prolonged by such information provided by NURSE GRIFFITH, causing Plaintiff to expend attorneys' fees on a criminal defense attorney and causing Plaintiff pain and suffering and emotional distress as a result of the pending investigation.

WHEREFORE, Plaintiff seeks an order prohibiting the practices set forth above, an order awarding back pay, front pay, compensatory damages, pre and post judgment interest, damages for emotional distress, punitive damages, nominal damages, and any other relief that this Court deems is just and proper.

## COUNT XV: BREACH OF FIDUCIARY DUTY AGAINST DEFENDANT NURSE GRIFFITH

257. Plaintiff incorporates the allegations made in paragraphs 6-9, 16-17, 28-29, 31-97, 92, and 94-122 as if fully restated herein.

258. As a patient of NURSE GRIFFITH's, Plaintiff and NURSE GRIFFITH share a relationship whereby Plaintiff reposes trust and confidence in NURSE GRIFFITH and NURSE GRIFFITH undertakes such trust and assumes a duty to advice, counsel, and/or protect Plaintiff.

259.    NURSE GRIFFITH breached her duties to Plaintiff when she revealed confidential health information to COJ.

260.    NURSE GRIFFITH breached her duties to Plaintiff when she provided demonstrably false information to COJ and the Jacksonville Sheriff's Office Integrity Unit regarding Plaintiff's actions in relation to the completion of the ADA and FMLA paperwork.

261.    Based on information and belief, COJ relied on such information provided by NURSE GRIFFITH when it decided to contact the JSO Integrity Unit with allegations that Plaintiff committed forgery and/or fraud.

262.    Based on information and belief, COJ relied on such information provided by NURSE GRIFFITH when it decided to deny Plaintiff's requested accommodation resulting in her inability to sit for the Chief promotional examination preventing Plaintiff from being promoted to a Chief position and causing Plaintiff to be denied the compensation and benefits associated with such a promotion.

263.    Based on information and belief, COJ relied on such information provided by NURSE GRIFFITH when it denied Plaintiff's request for intermittent FMLA.

264.    Based on information and belief, COJ relied on such information provided by NURSE GRIFFITH when it denied Plaintiff multiple administrative opportunities causing Plaintiff to be denied the compensation and benefits associated with such opportunities.

265. Based on information and belief, COJ relied on such information provided by NURSE GRIFFITH when it prevented Plaintiff from applying for the Health Safety Officer position.

266. Based on information and belief, COJ relied on such information provided by NURSE GRIFFIH when it decided to no longer approve Plaintiff to be a clinical field preceptor for COJ's JFRD personnel attending paramedic programs at the south campus of Florida State College at Jacksonville.

267. Based on information and belief, The JSO Integrity Unit's investigation was unnecessarily prolonged by such information provided by NURSE GRIFFITH, causing Plaintiff to expend attorneys' fees on a criminal defense attorney and causing Plaintiff pain and suffering and emotional distress as a result of the pending investigation.

WHEREFORE, Plaintiff seeks an order prohibiting the practices set forth above, an order awarding back pay, front pay, compensatory damages, pre and post judgment interest, damages for emotional distress, punitive damages, nominal damages, and any other relief that this Court deems is just and proper.

## DEMAND FOR JURY TRIAL

Plaintiff hereby demands a trial by jury of all issues so triable.

Respectfully submitted this _____ day of September 2024.

**DELEGAL POINDEXTER**
**& UNDERKOFLER, P.A.**

_____
JAMES C. POINDEXTER
Florida Bar No.: 116039
T.A. ("TAD") DELEGAL, III, B.C.S
Florida Bar No.: 0892701
ALEXANDRA E. UNDERKOFLER
Florida Bar No.: 1018209
424 East Monroe Street
Jacksonville, Florida 32202
Telephone No.: (904)633-5000
Facsimile No.: (904) 358-2850
Email: tad@delegal.net
Email: james@delegal.net
Email: alex@delegal.net
Secondary email: office@delegal.net
*Counsel for Plaintiff*

## CERTIFICATE OF SERVICE

I certify that on September ___, 2024, I filed the foregoing with the Clerk of the Court using the CM/ECF system, which will send notice of such filing to all attorneys of record.

_____
Attorney